OPINION
{¶ 1} Appellant Mark K. O'Brien appeals from his divorce in the Delaware County Court of Common Pleas. Appellee Theresa L. O'Brien is appellant's former spouse. The relevant facts leading to this appeal are as follows.
 {¶ 2} Appellant and appellee were married on July 13, 1985. On November 16, 2000, appellee filed a complaint for divorce. Appellant filed an answer and counterclaim on December 14, 2000. The trial was conducted before the magistrate over the course of three days in early December 2001. On January 3, 2002, the magistrates issued a decision recommending the granting of a divorce and, inter alia, disposition of real estate.
 {¶ 3} On January 17, 2002, both appellant and appellee filed separate objections to the decision of the magistrate. On January 28, 2002, the magistrate issued an amended decision. Upon motion of the appellant, on May 10, 2002, the magistrate issued findings of fact and conclusions of law. On May 23, 2002, appellant filed objections to the magistrate's amended decision. Appellee did likewise on May 24, 2002. On July 17, 2002 the trial court ruled on the objections entering a Judgment Entry Adopting Magistrate's Decision of January 3, 2002 and Amended Magistrate's Decision of January 28, 2002.
 {¶ 4} On September 24, 2002, the trial court sua sponte issued a Corrective Judgment Entry Adopting Magistrate's Decision of January 3, 2002; Amended Magistrate's Decision of January 28, 2002; and Second Amended Agreed Magistrate's Decision and Stipulation of the Parties of March 4, 2002.
 {¶ 5} On July 17, 2002, the trial court issued a judgment entry adopting the magistrate's decision and amended decision. On August 2, 2002, appellant and appellee filed notice of appeal and a cross appeal in Case No. 02 CA-F-08-038.
 {¶ 6} On June 4, 2003, this Court reversed and remanded this case to the trial court with instructions that the trial court must specifically state whether it is overruling or sustaining any, all, or part of any duly filed objections to a magistrate's decision, as per Civ.R. 53(E) (4) (b). See, O'Brien v. O'Brien
(June 4, 2003), 5th Dist. No. 02 CA-F-08-038 at ¶ 29.
 {¶ 7} On November 17, 2003 the trial court entered a Judgment Entry Upholding Magistrate's Decision and Decree of Divorce. On December 10, 2003, appellant filed his notice of appeal, and herein raises the following eight Assignments of Error:
 {¶ 8} "I. The court erred to the prejudice of the appellant abused its discretion in repeatedly permitting the appellee to introduce testimony for the purpose of attempting to show the bad character of the appellant in derogation of the ohio rule of evidence 608 (b).
 {¶ 9} "II. The trial court erred to the prejudice of the appellant and abused its discretion by establishing spousal support without first considering all the factors as set forth in 3105.18 and 3105.171 and, in particular, the need of the court to consider the parties' position after the division of assets before considering the issue of the propriety of spousal support.
 {¶ 10} "III. The court erred to the prejudice of the appellant abused its discretion in its determination of the level of income that the husband and wife should be found to make and in making a determination setting support on an imputed amount for husband without making a findng that the appellant was voluntarily underemployed.
 {¶ 11} "IV. The court erred to the prejudice of the appellant abused its discretion by failing to divide the parties' assets and liabilities in an equitable fashion.
 {¶ 12} "V. The court erred to the prejudice of the appellant and abused its discretion in finding that the appellant was in contempt for failing to comply with certain temporary orders.
 {¶ 13} "VI. The court erred to the prejudice of the appellant and abused its discretion in its award of attorney's fees and accountant's fees.
 {¶ 14} "VII. The trial court erred to the prejudice of the appellant and abused its discretion in adopting findngs of fact and conclusions of law that are not supported by the record and were nothing more than the proposed findings of the appellee.
 {¶ 15} "VIII. The trial court erred to the prejudice of the appellant and abused its discretion in inserting matters into the final magistrate's decision where there was no proper supplementation of the record."
 I. {¶ 16} In his first assignment of error appellant maintains that the trial court abused its discretion by allowing the introduction into evidence of alleged extramarital affairs and specific instances of conduct of the appellant. We disagree.
 {¶ 17} Appellant first argues that testimony concerning Deborah Lewis to the effect that he was engaged in an extramarital affair with her during the course of his marriage to appellee was error.
 {¶ 18} Deborah Lewis was named as a third-party defendant in the appellee's divorce complaint filed November 16, 2000. (Magistrate's Findings of Fact and Conclusions of law, filed May 10, 2002 at ¶ 4-5). [Hereinafter "Findings of Fact']. Additionally, appellant did not object to the testimony concerning Ms. Lewis at the trial court level. (T. Dec. 3, 2001 at 27; 55-59). Accordingly, any complaints as to testimony concerning Ms. Lewis have been waived. Stores Realty Co. v.Cleveland (1975), 41 Ohio St.2d 41, 322 N.E.2d 629, Atwood v.Leigh (1994), 98 Ohio App.3d 293, 648 N.E.2d 548.
 {¶ 19} The appellant, moreover, may not rely upon the "plain error" exception to the waiver rule. The plain error doctrine provides for the correction of errors clearly apparent on their face and prejudicial to the complaining party even though the complaining party failed to object to the error at trial.Reichert v. Ingersoll (1985), 18 Ohio St.3d 220, 223, 18 OBR 281, 284, 480 N.E.2d 802, 805; Schade v. Carnegie Body Co.
(1982), 70 Ohio St.2d 207, 209, 24 O.O.3d 316, 317,436 N.E.2d 1001, 1003. The plain error doctrine may be utilized in civil cases only with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. Cleveland Elec. Illum. Co. v. Astorhurst Land Co.
(1985), 18 Ohio St.3d 268, 275, 18 OBR 322, 327-328,480 N.E.2d 794, 800.
 {¶ 20} In the case at bar, the testimony concerning Ms. Lewis was originally introduced concerning the breakup of the marriage and the reasons for the parties' incompatibility. Moreover, the trier of fact is vested with the authority to weigh the evidence and assess the credibility of the witnesses. State v. DeHass
(1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. The trial court was free to believe all, part, or none of the testimony regarding the suspicions that appellant was engaged in an extramarital affair. Rodgers v. Rodgers (Sept. 2, 1997), 10th Dist. Nos. 96APF01-1333, 96APF01-67.
 {¶ 21} Appellant further objects to the testimony of a third party, John Stomps, that appellant had engaged in sexual acts with other women during the course of his marriage to appellee and that appellant, in an unrelated prior civil case, had allegedly told Mr. Stomps that he would lie under oath in that prior proceeding.
 {¶ 22} The admission or exclusion of evidence rests in the sound discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173, 180, 510 N.E.2d 343. Our task is to look at the totality of the circumstances in the particular case under appeal, and determine whether the trial court acted unreasonably, arbitrarily or unconscionably in allowing or excluding the disputed evidence. State v. Oman (Feb. 14, 2000), Stark App. No. 1999CA00027. As a general rule, all relevant evidence is admissible. Evid.R. 402. However, Evid.R. 608(B) states in relevant part: "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid. R. 609 may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified."
 {¶ 23} The testimony of John Stomps was not "reputation or opinion" evidence concerning the appellant's veracity. Rather, the evidence was of specific instances of appellant's conduct. The testimony was not brought out on cross examination, but, rather was introduced in appellee's case in chief. Accordingly, such testimony was not admissible because it was not relevant to any of the issues in the case. State v. Leuin (1984),11 Ohio St.3d 172, 174, 464 N.E.2d 552, 554.
 {¶ 24} However, while the record reflects a limited number of instances of improper evidence being heard by the trial court, in a bench trial, we presume that the trial court relied on only relevant, material, and competent evidence in arriving at its judgment absent a showing to the contrary. State v. Richey
(1992), 64 Ohio St.3d 353, 357, 595 N.E.2d 915. In other words, the use by the appellee of evidence of the appellant's untruthfulness is improper and constitutes error, but while such error may be cause for reversal because of its prejudicial effect on a jury, it must affirmatively appear that in a bench trial the court relied on such testimony in arriving at its verdict in order for such error to be ground for reversal. State v. Whitt
(1991), 68 Ohio App.3d 752, 758, 589 N.E.2d 492, citing State v.White (1968), 15 Ohio St.2d 146, 239 N.E.2d 65, at paragraph two of the syllabus. Appellant has not referenced nor is there any indication in the record that the magistrate or the trial court relied on any of the improper evidence. In re: M.P., 9th Dist. Nos. 21884, 21948, 2004-Ohio-4325 at ¶ 7. As such, we cannot say that the trial court's decision clearly would have been different but for the admission of improper evidence.
 {¶ 25} Accordingly, Appellant's first assignment of error is overruled.
 II. III. {¶ 26} Because appellant's second and third assignments of error are interrelated, we shall address them together.
 {¶ 27} In his Second Assignment of Error, appellant contends the trial court abused its discretion in awarding spousal support, and erred in failing to sufficiently consider the factors under R.C. 3105.18(C).
 {¶ 28} In his Third Assignment of Error appellant argues the trial court erred in imputing income to him, and further in not finding that appellee was underemployed. We disagree.
 {¶ 29} A trial court's decision concerning spousal support may only be altered if it constitutes an abuse of discretion.Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 67, 554 N.E.2d 83. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 450 N.E.2d 1140. R.C. 3105.18(C)(1)(a) thru (n), provides the factors that a trial court is to review in determining whether spousal support is appropriate and reasonable and in determining the nature, amount, terms of payment, and duration of spousal support.
 {¶ 30} A trial court's decision not to acknowledge all evidence relative to each and every factor listed in R.C.3105.18(C)(1) does not necessarily mean the evidence was not considered. Barron v. Barron, Stark App. No. 2002CA00239, 2003-Ohio-649. In Watkins v. Watkins, Muskingum App. No. CT 2001-0066, 2002-Ohio-4237, this court noted as follows: ". . . Unlike the statute concerning property division, R.C. 3105.18
does not require the lower court to make specific findings of fact regarding spousal support awards. R.C. 3105.18 (C) (1) does set forth fourteen factors the court must consider, however, in determining if spousal support is appropriate and reasonable. If the court does not specifically address each factor in its order, a reviewing court will presume each factor was considered, absent evidence to the contrary. Cherry v. Cherry (1981),66 Ohio St. 2d 348, 356, 421 N.E. 2d 1293." Id. at ¶ 21; Cronebach v.Cronebach (March 8, 2004), Ashland App. No. 03-COA-030 at ¶ 35.
 {¶ 31} R.C. 3105.18(C) (1) provides as follows:
 {¶ 32} "(C) (1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 {¶ 33} "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code; (b) The relative earning abilities of the parties; (c) The ages and the physical, mental, and emotional conditions of the parties; (d) The retirement benefits of the parties; (e) The duration of the marriage; (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home; (g) The standard of living of the parties established during the marriage; (h) The relative extent of education of the parties; (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties; (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party; (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought; (l) The tax consequences, for each party, of an award of spousal support; (m) The lost income production capacity of either party that resulted from that party's marital responsibilities; (n) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 34} Appellant first argues that the trial court erred in considering the relative earning ability of the parties. Specifically, the trial court erred in imputing a $100,000.00 yearly income to appellant and further by not imputing a full-time income to appellee.
 {¶ 35} The court found that appellant had been employed in the roofing business, but had left his employment to begin full-time self employment in his own business, MKO Dezign Unlimited, L.L.C. (Findings of Fact at ¶ 9). Appellant started this business in late 1998. (Id.). The court found that appellant has a history of income as a commercial roofing consultant with W.P. Hickman Systems as follows: 1995: $127,714.00; 1996: $120,709.00; 1997: $128,980.00; 1998: $112,537.00. (Id. at 10).
 {¶ 36} In the case at bar, the magistrate found that appellant had a history of sixfigure W-2 income. (Findings of Fact at ¶ 10; 25(a) (ii)). The parties stipulated to the report of a vocational evaluator, Steve Rosenthal. (T., Dec. 5, 2001 at 371-373). The report indicated that appellant had the ability to generate between $75,000.00 to $100,000.00 per year in income. Appellant testified that he can earn up to $120,000.00 per year. (Id. at 367).
 {¶ 37} Ohio courts have determined that earning ability involves "both the amount of money one is capable of earning by his or her qualifications, as well as his or her ability to obtain such employment." Haniger v. Haniger (1982),8 Ohio App.3d 286, 288. When considering the relative earning abilities of the parties in connection with an award of spousal support, Ohio courts do not restrict their inquiry to the amount of money actually earned, but may also hold a person accountable for the amount of money a "person could have earned if he made the effort." Beekman v. Beekman (August 15, 1991), Franklin App. No. 90AP-780, 6, unreported.
 {¶ 38} Because R.C. 3105.18(C) permits inquiry into a party's earning potential, Ohio courts often impute income to parties who are voluntarily underemployed or otherwise not working up to their full earning potential. See, e.g., Frost v. Frost (1992),84 Ohio App.3d 699; Haniger, supra; Beekman, supra;Gillingham v. Gillingham (May 28, 1992), Montgomery App. No. 12766, unreported. Accordingly, even if it is determined that a party has no income, a court can impute income based on the party's earning ability. Miller v. Miller (Dec. 28, 1994), 2nd Dist. No. 14540.
 {¶ 39} We find that the court did not err in determining appellant's income for purposes of spousal support. See, Whartonv. Wharton, 5th Dist. No. 02 CA 83, 2003-Ohio-3857 at ¶ 16-17.
 {¶ 40} Concerning appellee's income, the magistrate found that appellee had been a full-time homemaker during the past fifteen (15) years. (Findings of Fact at ¶ 25 (a) (i)). Appellee has become re-certified to teach and has accepted part-time employment. (Id.). The court found appellee's income to be $20,000.00. (Id). The magistrate further found that "[p]laintiff's fifteen (15) year period of unemployment due to her marital responsibilities (both within the home and relative to the minor children) has adversely impacted her current earning ability." (Findings of Fact at ¶ 27). Finally, the Court noted that it "shall retain jurisdiction to modify the amount, but not the term, of this spousal support provision. On or before April 30 each year, the Parties shall exchange all income tax returns (federal, state, and local) with all schedules and attachments." (Id. at 21).
 {¶ 41} Accordingly, we do not find the court's decision in this respect to an abuse of discretion.
 {¶ 42} Appellant next argues that the court failed to consider the property division prior to determining the issue of spousal support.
 {¶ 43} The court's reviewed the R.C. 3105.18(C) (1) factors. (Findings of Fact at ¶ 27). The court found that "neither Party will derive significant income from property divided, disbursed, or distributed pursuant to R.C. 3105.171 . . ." (Id.). In making its determination, the trial court noted specific factors that were particularly relevant to the case. The trial court mentioned the age of the parties, the length of the marriage, the disparity in the parties' earnings, the parties' income earning capacity, the parties' education, and the lifestyle established during the marriage as particularly relevant factors.
 {¶ 44} The record does reflect, as appellant notes, that appellee received half of the real estate proceeds from the sale of the marital home. However, based on the trial court's detailed decision, the strong presumption that the trial court considered each statutory factor, and our review of the record, we do not find that the trial court failed to consider all property division issues prior to its decision regarding spousal support.
 {¶ 45} The appellant further argues that the trial court erred because the award of spousal support does not terminate upon appellee's cohabitation with an unrelated male. The appellant has cited no statutory or case law that requires a trial court to terminate spousal support upon the cohabitation of the recipient.
 {¶ 46} In fact, this court has stated: "[t]he trial court is not required to reserve jurisdiction to terminate spousal support in event of cohabitation. R.C. § 3105.18(E). Jordan v. Jordan
(1996), 117 Ohio App.3d 47." Newman v. Newman, 5th Dist. No. 2003 CA 00105, 2004-Ohio-5363 at ¶ 57. Further, as the trial court retained jurisdiction over the amount of spousal support, appellant potentially has recourse for a change of circumstances. See, e.g. Barrows v. Barrows, 9th Dist. No. 21904,2004-Ohio-4878 at ¶ 9.
 {¶ 47} Appellant's second and third assignments of error are overruled.
 IV. {¶ 48} In his fourth assignment of error appellant argues that the trial court failed to divide the parties' assets and liabilities in an equitable fashion. We disagree.
 {¶ 49} A review of the trial court's division of marital property is covered by the abuse of discretion standard. Martinv. Martin (1985), 18 Ohio St. 3d 292. We cannot substitute our judgment for that of the trial court unless, when considering the totality of the circumstances, the trial court abused its discretion. Holcomb v. Holcomb (1989), 44 Ohio St. 3d 128. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore, supra.
 {¶ 50} R.C. 3105.171 (C) mandates an equal division of marital property, unless such would be inequitable under the circumstances. In dividing marital assets, and in deciding whether to order an unequal award, a trial court must consider all relevant factors, including those listed in R.C. 3105.171
(F). The trial court must address the statutory factors in making a decision. Neel v. Neel (1996), 113 Ohio App. 3d 24, 32.
 {¶ 51} Appellant complains that the trial court: 1). Selected an inappropriate value for his automobile; 2). Valued certain of appellant's cash accounts while not attributing any value to appellee's checking account; 3). Disregarded the $26,000.00 which appellee removed from the parties' joint account before filing for divorce; 4). Failed to consider lost income tax refunds the parties may have received if they had filed jointly; and 5). Failed to consider funds that appellant had received from his mother.
 {¶ 52} The court was presented with two valuations for appellant's automobile; i.e. an appraised valuation of $22,750.00 and the Kelly Blue Book value of $20,260.00. (Judgment Entry Upholding Magistrate's Decision and Decree of Divorce, filed Nov. 17, 2003 at 7). We cannot find that based upon the evidence presented the trial court's decision to accept the appraised value instead of the "blue book" value was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore, supra.
 {¶ 53} Appellant does not specifically identify which "various cash accounts"; "life insurance policies" and "intangible assets" that he contends the court failed to equitably award. Nor does appellee cite where in any of the transcripts or judgment entries these errors appear. See App.R. 12(A) (2). As appellant only identifies the $26,000.00 appellee removed from the account prior to the divorce we will only consider that argument.
 {¶ 54} The evidence at trial substantiated that prior to filing for divorce, appellee removed one-half of the parties' bank account in the amount of $26,000.00. (T., Dec. 4, 2001 at 198-99; Findings of Fact at 5). The evidence also established that upon learning that appellee had made this withdrawal, appellant removed approximately $129,000.00 in funds from the parties' joint bank accounts and consolidated the monies in accounts solely in the name of appellant. (T., Dec. 5, 2001 at 445-446; Findings of Fact at 5). In overruling appellant's objection, the trial court found "[t]he Magistrate correctly determined that there was no obligation to account for the $26,000 that was removed by the Plaintiff-Wife as there has been no presentation by the Defendant-Husband that Plaintiff-Wife's use of those funds constituted marital misconduct." (Judgment Entry Upholding Magistrate's Decision and Decree of Divorce, filed Nov. 17, 2003 at 8).
 {¶ 55} The funds removed by appellee were used for living expenses and attorney fees. (T., Dec. 4, 2001 at 198-204; Findings of Fact at 5-6). The magistrate awarded each party his or her own bank accounts. Appellant received the Bank One checking, two National City accounts, and his Fifth Third account, for an aggregate total of $22, 221. (Findings of Fact at 5; 17). Appellee retained the account into which she had placed the $26,000. (Id).
 {¶ 56} Under the totality of the circumstances, we do not find that the trial court abused its discretion concerning the $26,000.00.
 {¶ 57} Appellant next argue that the trial court erred because it did not take into consideration money lost because the parties did not file a joint tax return.
 {¶ 58} Initially, we note that appellant has failed to properly brief this issue on appeal as required by App.R. 16(A)(7), which states that an appellant shall include in its brief "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contention, with citations to theauthorities, statutes and parts of the record on which appellant relies." [Emphasis added.] In this case, appellant has wholly failed to cite any authority or statutes in support of his argument. An appellate court is empowered to disregard an assignment of error presented for review due to lack of briefing by the party presenting that assignment. State v. Watson
(1998), 126 Ohio App.3d 316, 710 N.E.2d 340, discretionary appeal disallowed in (1998), 82 Ohio St.3d 1413, 694 N.E.2d 75.
 {¶ 59} Appellant next make the summary argument that the trial court erred by not including as a marital debt an obligation that appellant owed to his mother. Appellant submitted no documentary evidence at trial to support that an obligation to repay his mother in fact existed. The trier of fact is vested with the authority to weigh the evidence and assess the credibility of the witnesses. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. The trial court was free to believe all, part, or none of the testimony regarding the obligation to repay appellant's mother. We find no abuse of discretion.
 {¶ 60} Appellant next makes the conclusory statement that the effective date of the child support order is invalid and that the court cannot include private school tuition in a child support order. Appellant provides no citation to the record or to any authority to support his argument. Nor does appellant suggest what the proper date for the child support order is in this case.
 {¶ 61} The trial court found that the child support was made retroactive to the date appellant filed his Motion to Replace or Modify Temporary Orders on July 5, 2001.
 {¶ 62} If a court determines that a support order should be modified, it may make the modification order effective from the date the motion for modification was filed. See Tobens v. Brill
(1993), 89 Ohio App.3d 298, 624 N.E.2d 265; Osborne v. Osborne
(1992), 81 Ohio App.3d 666, 611 N.E.2d 1003; State ex rel.Draiss v. Draiss (1990), 70 Ohio App.3d 418, 591 N.E.2d 354;Murphy v. Murphy (1984), 13 Ohio App.3d 388, 13 OBR 471,469 N.E.2d 564. Therefore, determining whether to make a modification retroactive is a matter within the discretion of the domestic relations court and cannot be reversed unless the trial court abuses its discretion. Id. at 389, 469 N.E.2d at 565-566. An abuse of discretion connotes more than an error of law or judgment; it implies that the judgment of a court is unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482-483,450 N.E.2d 1140, 1142.
 {¶ 63} As noted in State ex rel. Draiss, supra,70 Ohio App.3d at 421, 591 N.E.2d at 356: "Absent some special circumstance, an order of a trial court modifying child support should be retroactive to the date such modification was first requested." Any other holding might produce an inequitable result in view of the substantial time it frequently takes to dispose of motions to modify child *140 support obligations. Murphy,supra, 13 Ohio App.3d at 389, 13 OBR at 472-473,469 N.E.2d at 565-566. In the instant case, appellant fails to point out any special circumstance. Accordingly, the trial court did not abuse its discretion in making the modification retroactive to July 5, 2001.
 {¶ 64} In Rand v. Rand (1985), 18 Ohio St.3d 356,481 N.E.2d 609, the Supreme Court of Ohio held that judicial enforcement of a noncustodial parent's agreement to pay for his son's religious education does not violate Section 7, Article I
of the Ohio Constitution. In Chief Justice Celebrezze's concurrence he noted that requiring a parent to pay for a religious education does not violate the Establishment Clause; it is a permissible form of financial child support that is designed to partially reimburse the custodial parent for an expense she incurred in rearing their child. Id. at 360,481 N.E.2d at 612-613. This view has been followed in the lower courts. Smithv. Null (2001), 143 Ohio App.3d 264, 757 N.E.2d 1200, Menciniv. Mencini, 8th Dist. Nos. 83638 83820, 2004-Ohio-3125.
 {¶ 65} Appellant's Fourth Assignment of Error is overruled in its entirety.
 V. {¶ 66} In his Fifth Assignment of Error, appellant argues that the trial court erred in finding him in contempt relative to horse related expenses and uninsured medical expenses. We disagree.
 {¶ 67} At the time of trial, two motions for contempt filed by appellee were pending. The first motion filed June 18, 2001 alleged appellant had failed to comply with the Magistrate's temporary orders filed January 24, 2001. Specifically, the motion alleged that appellant had failed to pay expense related to the horse of the minor child, Rachel, and had failed to pay uninsured medical expenses of both of the minor children of the parties. The second motion for contempt filed October 1, 2001 alleged that appellant had failed to promptly and timely pay the minor children's private school tuition expenses as required under the Magistrate's interim order filed July 11, 2001.
 {¶ 68} A court's authority to punish a party for contempt for failure to comply with a prior order derives from both the court's inherent authority and from statutory authority. Zakanyv. Zakany (1984), 9 Ohio St.3d 192, 459 N.E.2d 870; Hale v.State (1896), 55 Ohio St. 210, 45 N.E. 199. Contempt is a disregard of, or disobedience to, the orders or commands of judicial authority. State v. Flinn (1982), 7 Ohio App.3d 294, 7 OBR 377, 455 N.E.2d 691. Indirect contempt may include the disobedience of, or resistance to, a lawful order, judgment, or command of a court officer. See R.C. 2705.02. Courts must make civil contempt findings based upon clear and convincing evidence.ConTex, Inc. v. Consol. Technologies, Inc. (1988),40 Ohio App.3d 94, 531 N.E.2d 1353. A sanction for civil contempt must allow the contemnor the opportunity to purge him or herself of contempt. Burchett v. Miller (1997), 123 Ohio App.3d 550, 552
(citations omitted).
 {¶ 69} When reviewing a finding of contempt an appellate court must apply an "abuse of discretion" standard. See State exrel. Ventrone v. Birkel (1981), 65 Ohio St.2d 10,417 N.E.2d 1249; Bailey v. Bailey, 5th Dist. No. 2003CA00319, 2004-Ohio-2004 at ¶ 32.
 {¶ 70} The evidence at trial established that appellant did not pay the horserelated fees because he did not approve of the expenditures. (T. Dec. 5, 2001 at 354-357; 370). The evidence further established that appellee paid the children's medical expenses. (Id. at 357; T. Dec 5, 2001 at 370). Finally, the record discloses that appellee paid the children's' tuition. (T. Dec. 4, 2001 at 231; 259). Appellant agreed that it was his desire that the children continue to attend private school. (T. Dec. 4, 2001 at 287).
 {¶ 71} The language of the court's orders did not provide restrictions upon the appellant's payment of the tuition, medical or horse-related expenses. Nor do the orders require appellant's approval of the expenses as a condition for his payment. Accordingly, we find the trial court did not abuse its discretion in finding the appellant in contempt.
 {¶ 72} Appellant's fifth assignment of error is overruled.
 VI. {¶ 73} In his sixth assignment of error, appellant contends that the trial court abused its discretion in awarding attorney and expert witness fees to appellee. We disagree.
 {¶ 74} The Ohio Supreme Court has held that a trial court may award attorney's fees based upon statutory authorization.Motorists Mut. Ins. Co. v. Brandeburg (1995),72 Ohio St. 3d 157, 158. R.C. § 3105.18(H) provides, in pertinent part:
 {¶ 75} "(H) In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, including, but not limited to, any appeal, any proceeding arising from a motion to modify a prior order or decree, and any proceeding to enforce a prior order or decree, if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees."
 {¶ 76} Thus, in order for a trial court to award a party attorney fees under R.C. 3105.18(H), it must find that: (1) the other party has the ability to pay them, (2) the party seeking the fees needs them to fully litigate his or her rights and adequately protect his or her interests, and (3) the fees requested are reasonable. Myer v. Myer (Aug. 13, 1996), Franklin App. No. 96APF01-31. The party requesting attorney fees bears the burden of establishing the reasonableness of those fees. Shaffer v. Shaffer (1996), 109 Ohio App.3d 205, 214,671 N.E.2d 1317. An award of attorney fees is within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. Rand v. Rand (1985),18 Ohio St.3d 356, 359, 18 OBR 415, 481 N.E.2d 609.
 {¶ 77} A trial court's failure to recite the exact language of R.C. 3105.18(H) is not reversible error if the record supports the trial court's determination. Hess v. Reidel-Hess,153 Ohio App.3d 337, 2003-Ohio-3912, at ¶ 11; Trott v. Trott (Mar. 14, 2002), Franklin App. No. 01AP-852, 2002 WL 392286, citing Curtisv. Curtis (2000), 140 Ohio App.3d 812, 815, 749 N.E.2d 772;Mays v. Mays (Oct. 12, 2001), Miami App. No. 2000-CA-54, 2001 WL 1219345.
 {¶ 78} In Hess, supra, the Court of Appeals for the Tenth District noted: "[f]urther, it has been held that, even if a spouse is financially able to pay attorney fees, the court may award attorney fees if the other spouse used tactics that prolonged the litigation. See Pournaras v. Pournaras (June 26, 1986), Cuyahoga App. No. 50782, 1986 WL 7297; Matyas v. Matyas
(Jan. 17, 1985), Cuyahoga App. No. 48645, 1985 WL 7444. Although these cases were decided before R.C. 3105.18(H) was in effect, the cases are not contrary to R.C. 3105.18(H) because, when unnecessary attorney fees are incurred due to the conduct of the other spouse, the spouse is `prevented from adequately protecting her interests.' Fraiberg v. Fraiberg (Dec. 3, 1998), Cuyahoga App. No. 73321, 1998 WL 842077. Further, we have before held that an award of attorney fees may be predicated upon one party intentionally causing the other party to incur unnecessary, substantial fees. See Trott, supra, citing Kelly-Doley v.Doley (Mar. 12, 1999), Lake App. No. 96-L-217, 1999 WL 262165; see, also, Cimperman v. Cimperman, Cuyahoga App. No. 80807, 2003-Ohio-869, 2003 WL 547814." See, also Tonti v. Tonti, 10th Dist. Nos. 03 AP-494, 03 AP-728, 2004-Ohio-25290 at ¶ 106-107.
 {¶ 79} In the case at bar, appellee presented testimony and documentation to the effect that her legal fees in this matter were approximately $37,000.00. (T., Dec. 4, 2001 at 197-203). Appellee's attorney testified as to the fees and the reasonableness of the fees. (T. Dec. 5, 2001 at 373-386). Finally, appellant's attorney testified that prior to trial appellant's attorney fees approximated $11, 670.50. (Id. at 460-66).
 {¶ 80} The trial court awarded appellee $15,000.00 in legal fees. (Findings of Fact at 23-24: Judgment Entry Upholding Magistrate's Decision and Decree of Divorce, filed Nov. 17, 2003 at 20). The magistrate found the fees "were reasonable and appropriate in light of the complexity of the financial issues raised herein. (Findings of Fact at 14). The magistrate specifically found that the appellant "was not open and truthful throughout the proceedings and during the trial of the matter; that [appellant] impeded the discovery process; and that [appellant's] highly suspect record keeping relative to his business caused [appellee] to incur more legal fees than would otherwise been necessary." (Id). In overruling appellant's objection to the magistrate's decision awarding legal fees to appellee, the trial court echoed the statements of the magistrate relative to appellant's record keeping, discovery issues and motions for contempt. (Judgment Entry Upholding Magistrate's Decision and Decree of Divorce, filed Nov. 17, 2003 at 11).
 {¶ 81} Based upon a through review of the record, we cannot say the trial court abused its discretion in ordering appellant to pay $15,000 of the appellee's $37,000.00 legal fees.
 {¶ 82} Nor can we find that the trial court abused its discretion in ordering appellant to pay approximately $1,887.50 in fees to the forensic accountant, John W. McKillop. (Joint Exhibit A; Findings of Fact at 9; Judgment Entry Upholding Magistrate's Decision and Decree of Divorce, filed Nov. 17, 2003 at 20). The magistrate found that the hiring of a forensic account was necessary in this case due to appellant's failure to maintain his business records in an easily deciphered manner. (Findings of Fact at 14). The magistrate noted that approximately $900,000.00 flowed through appellant's bank accounts during the calendar year 2000, and that $340,000.00 was the result of intraaccount transfers. (Id.). The accountant also established that there were over $200,000.00 of unknown deposits to appellant's various bank accounts during the calendar year of 2000. (Id.).
 {¶ 83} In Tonti v. Tonti, 10th Dist. Nos. 03 AP-494, 03 AP-728, 2004-Ohio-25290, the Tenth District Court of Appeals noted "R.C. 3105.18(H) directs a trial court to determine whether a party would be prevented from fully litigating his or her rights and protecting his or her interests without an award of attorney fees. We find that the legislature's concern that a party be able to fully litigate his or her rights and protect his or her interests encompasses an award for expert witness fees incurred in cases such as this one, where neither appellee nor her attorneys could reasonably be expected to compile, evaluate and opine upon the voluminous financial materials pertaining to appellant's corporate enterprises. Had appellee not employed the services of expert witnesses in this case, she would clearly have been prevented from fully litigating her rights. Indeed, the magistrate found that appellee was `forced' to hire the experts to evaluate appellant's financial information and to testify as to the reasonableness of the attorney fees.
 {¶ 84} "While there is no case law directly on point, we find the following cases instructive. In Marquardt v. Marquardt
(Feb. 9, 1993), Franklin App. No. 92AP-1318, this court implicitly included expert witness fees with attorney fees in a domestic relations case. In denying an appeal of a $2,500 attorney fee award, this court cited the exclusion of expert witness fees, `a necessary witness under the circumstances,' as a reason why the appellant was fortunate not to be assessed a higher award. This court stated that `[u]nder the circumstances, the trial court would have been well within its discretion in awarding more than $2,500 in attorney's fees.' Id." (Id. at ¶ 113-114.
 {¶ 85} We find that the trial court did not abuse its discretion by ordering appellant to pay the accountant's fees. Had appellee not employed the services of expert witnesses in this case, she would clearly have been prevented from fully litigating her rights.
 {¶ 86} Appellant's sixth assignment of error is overruled.
 VII. {¶ 87} In his seventh assignment of error appellant claims the trial court erred in adopting findings of fact and conclusions of law not supported by the record. We disagree.
 {¶ 88} Nowhere in his brief does appellant inform this court of what findings of fact he claims are not supported by the record.
 {¶ 89} According to App.R. 12(A) (2): "The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)."
 {¶ 90} App.R. 16(A)(7) states that appellant shall include in his brief "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary."
 {¶ 91} An appellate court may rely upon App.R. 12(A) in overruling or disregarding an assignment of error because of "the lack of briefing" on the assignment of error. Hawley v. Ritley
(1988), 35 Ohio St. 3d 157, 159, 519 N.E.2d 390, 392-393.
 {¶ 92} Accordingly, we find that appellant has failed to comply with App.R. 16(A) because he fails to present "reasons in support of the contentions" and for his "lack of briefing" on his assignment of error.
 {¶ 93} Appellant's seventh assignment of error is overruled.
 VIII. {¶ 94} In his eighth assignment of error, appellant apparently contends that he has been prejudiced by the trial court's inclusion in the Judgment Entry of a disposition of funds held by Joseph Barone, Esq. We disagree.
 {¶ 95} In the Second Amended Agreed Magistrate's Decision and Stipulation of the Parties, filed March 4, 2002 the parties agreed and acknowledged that two of the three parcels of real estate held by them had been sold. The proceeds of the sale were allocated as follows: Appellee received $27,298.98; appellant received $7,298.97 and the sum of $20,000.00 was escrowed in the trust account of Joseph J. Barone, Esq. (Id. at 2). The funds escrowed to attorney Barone were to be used to pay appellant's obligations, including arrearages accrued under the Temporary Orders, attorney fees and other costs of litigation, including the fees of the forensic accountant as set forth in the Amended Magistrate's Decision of January 28, 2002. (Id.).
 {¶ 96} In its Judgment Entry Upholding Magistrate's Decision and Decree of Divorce, filed Nov. 17, 2003 the trial court ordered the funds held by Attorney Barone disbursed with credit being given to appellant. (Id. at 21-22).
 {¶ 97} Appellant has failed to articulate exactly how he has been prejudiced by the trial court's order, which is in compliance with his agreement of March 4, 2002.
 {¶ 98} Accordingly, appellant's eighth assignment of error is overruled.
 {¶ 99} The judgment of the Delaware County Court of Common Pleas is affirmed.
Gwin, P.J., Hoffman, J., and Boggins, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, The judgment of the Delaware County Court of Common Pleas is affirmed. Costs to appellant.