[Cite as *Corey v. Corey*, 2014-Ohio-3258.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
### GREENE   COUNTY

| | | |
|---|---|---|
| ANGELA COREY | : | |
| | : | Appellate Case No. 2013-CA-73 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case No. 2011-DM-226 |
| v. | : | |
| | : | |
| RICHARD COREY | : | (Civil Appeal from Common Pleas |
| | : | Court, Domestic Relations) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 25th day of July, 2014.

. . . . . . . . . . .

DAVID M. McNAMEE, Atty. Reg. #0068582, 42 Woodcroft Trial, Suite D, Beavercreek, Ohio
45430
        Attorney for Plaintiff-Appellant

ROBERT K. HENDRIX, Atty. Reg. #0037351, 87 South Progress Drive, Xenia, Ohio 45385
        Attorney for Defendant-Appellee

. . . . . . . . . . . . .

HALL, J.

{¶ 1}   Angela Corey appeals a trial court's order changing her children's sole

residential parent to their father, appellee Richard Corey. Angela assigns error to the trial court's

reliance on the guardian ad litem's written report and to findings of fact that the trial court made

under the governing statute, R.C. 3109.04.

{¶ 2}     At the custody hearing, the guardian ad litem's report was admitted into evidence without objection. Angela may not object for the first time on appeal, and we see no plain error with the report's admission. As to the findings of fact, based on the evidence presented, all of the findings are reasonable.

{¶ 3}     Finding no merit to any of the assignments of error, we affirm.

## BACKGROUND

{¶ 4}     Angela and Richard are the mother and father of four minor children. When the parties were divorced in February 2012, the trial court named Mother the children's sole residential parent. Later, Father moved for sole custody of them. A hearing was held at which Mother, Father, and other witnesses testified. Among the other witnesses were the children's psychologist and the court-appointed guardian ad litem (GAL). The GAL testified about his investigation and also submitted a written report, which was admitted into evidence without objection. He recommended that the children's sole residential parent be changed to Father.

{¶ 5}     The trial court granted Father's motion, in November 2013, naming him the children's residential parent. Mother appealed.

## ANALYSIS

{¶ 6}     Mother assigns three errors to the trial court's custody-change decision. The first and second assignments of error challenge factual findings. The third assignment of error challenges the court's reliance on the GAL's written report. We begin with the third assignment of error.

### *The GAL's Written Report*

{¶ 7} The third assignment of error contends that the trial court should not have relied on the GAL's written report because the GAL did not comply with his duties under Sup.R. 48(D). However a party cannot assign error to the admission of evidence if the party did not timely object to its admission. Evid.R. 103(A)(1). Here, at the end of the hearing, Father's attorney moved to admit the GAL's written report into evidence, and the trial court admitted it without any objection from Mother.

{¶ 8} The only remaining issue under this assignment of error is whether the admission of the GAL's report constitutes plain error. *See* Evid.R. 103(D). "The plain error doctrine provides for the correction of errors clearly apparent on their face and prejudicial to the complaining party even though the complaining party failed to object to the error at trial." *O'Brien v. O'Brien*, 5th Dist. Delaware No. 2003-CA-F12069, 2004-Ohio-5881, ¶ 19, citing *Reichert v. Ingersoll*, 18 Ohio St.3d 220, 223, 480 N.E.2d 802 (1985). "The plain error doctrine may be utilized in civil cases only with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id*., citing *Cleveland Elec. Illum. Co. v. Astorhurst Land Co.*, 18 Ohio St.3d 268, 275, 480 N.E.2d 794 (1985). Here, from the face of the admission, no error is apparent, and no manifest miscarriage of justice will result if the report's admission is upheld. The admission of the GAL's report was not plainly erroneous.

{¶ 9} We note that even if Mother had objected, we would find no error. Mother contends that the GAL did not comply with the duties imposed on him by Sup.R. 48(D), which pertinently provides that "[i]n order to provide the court with relevant information and an informed recommendation regarding the child's best interest, a guardian ad litem shall perform, at a minimum, the responsibilities stated in this division * * *." But "Sup.R. 48 does not have the

force of law." *Nolan v. Nolan*, 4th Dist. Scioto No. 11CA3444, 2012-Ohio-3736, ¶ 26. Rather, the rule, like all Superintendence Rules, is an administrative directive. *See Pettit v. Pettit*, 12th Dist. Fayette No. CA2011-08-018, 2012-Ohio-1801, ¶ 12 (saying that the rules are "administrative directives only, and are not intended to function as rules of practice and procedure"). This means that the rule does not create any individual rights. *See id.* (saying that the rules "are purely internal housekeeping rules which are of concern to the judges of the several courts but create no rights in individual defendants"); *Nolan* at ¶ 26 ("Ohio appellate courts have indicated that the Rules of Superintendence are general guidelines for the conduct of the courts and do not create substantive rights in individuals or procedural law."). Accordingly, whether to consider the report of a GAL when the GAL did not fully comply with Sup.R. 48(D) is within a trial court's discretion. *See Nolan* (concluding that, given the facts in that case, the trial court abused its discretion by considering the GAL's testimony and report because the GAL fell so far below the minimum standards established in Sup.R. 48(D)(13) that the GAL's testimony and report could not be considered competent, credible evidence of the child's best interest).

{¶ 10} Mother says that the GAL failed to perform certain duties under Sup.R. 48(D)(13). This division provides that "[i]n order to provide the court with relevant information and an informed recommendation as to the child's best interest," a GAL typically must, "at a minimum," do certain things, which include "observ[ing] the child with each parent, foster parent, guardian or physical custodian," Sup.R. 48(D)(13)(a), and "[i]nterview[ing] school personnel, [and] medical and mental health providers," Sup.R. 48(D)(13)(g). Here, the GAL testified that he did not observe any of the children with either Mother or Father, did not interview school personnel, and did not interview medical or mental health providers.

Nevertheless, under the facts of this case, we cannot say that the trial court abused its discretion by admitting and considering the GAL's report. With respect to why he did not interview school personnel, the GAL noted, "I have the school records though of what was going on at the schools and I was concerned about [one child]'s behavior and I think I reported that." (July 12, 2013 Tr. 29). And as to why he did not interview medical or mental health providers, the GAL explained that "neither Mom or Dad expressed any concerns in that regard." (*Id*. 30). The trial court could reasonably have concluded that, considering the GAL's entire investigation in this case, his report was still competent and credible evidence of the children's best interest.

{¶ 11}   The third assignment of error is overruled.

### *The Residential-Parent Decision*

{¶ 12}   The first and second assignments of error challenge the findings of fact that the trial court made to support its decision to change the children's residential parent. A reviewing court should presume that the trial court's findings were correct. *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). "'A finding of error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not. The determination of credibility of testimony and evidence must not be encroached upon by a reviewing tribunal * * *.'" *Davis v. Flickinger*,_77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997), quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 81, 461 N.E.2d 1273 (1984).

{¶ 13}   To make a residential-parent change, the governing statute, R.C. 3109.04, requires a court to make three findings: (1) that a change has occurred in the child's or residential parent's circumstances, (2) that the residential-parent change is in the child's best interest, and (3)

that one of the situations listed in R.C. 3109.04(E)(1)(a)(i) to (iii) applies. The trial court here made all three findings, but Mother contends that they are not supported by the evidence.

**{¶ 14}** The first assignment of error challenges the finding that a change in circumstances has occurred. This change "must be a change of substance, not a slight or inconsequential change." *Davis* at 418. But the threshold for change should not be "so high as to prevent a trial judge from modifying custody if the court finds it is necessary for the best interest of the child." *Id.* at 420-421. Here, the trial court found that "[t]he children were left alone in the second oldest child's care for much of the time" and that the second oldest child "was placed in a caretaker roll and was forced to sacrifice her own childhood to raise her younger brother and sister." Judgment Entry, Reallocation of Parental Rights & Responsibilities, and Child Support Order, 3 (Nov. 12, 2013). The court also found that Mother "struggled with accepting the dissolution of her marriage and turned to the children as her confidants." *Id.* As to Father, the court found that he had "remarried a woman with children of her own and the children of this marriage have formed a tight bond with their step-siblings." *Id.* "The children," the court found, "have become close to their stepmother." *Id.* Furthermore, the court found that "[o]ne of the children is a victim of a bully and needs to change schools" and "[a]nother child has developed behavior issues and needs more structure than * * * [Mother] can provide." *Id.*

**{¶ 15}** Mother says that no credible evidence suggests that the children were often left alone with the second oldest child or that the second oldest was the other children's caretaker. She says that to make these findings the trial court relied on hearsay in the GAL's report, specifically, Father's comments to the GAL that "neighbors have told him the children were

unsupervised in the neighborhood and were frequently fed by neighbors since the children complained Mother was not around and there was no food in the home," Report and Recommendation of the Guardian Ad Litem, 2. Mother points out that the GAL never contacted any of these neighbors to confirm Father's story. Mother also points out that she presented several witnesses who testified that these allegations are not true. In addition, Mother says that the evidence does not support the finding that she struggled to accept her marriage's breakup and confided in the children. The only evidence to support this finding, says Mother, is the GAL's testimony that she called Father's new wife names. But the testimony also shows, says Mother, that Father and his new wife called her names. Lastly, Mother says that the evidence does not support the finding that one child is being bullied at school or the finding that another child has behavior issues and needs more structure than she can provide. Mother cites the testimony of the children's psychologist that the children are well cared for by her.

{¶ 16} Mother fails to convince us that the trial court erred by finding that Mother was having difficulty moving on with her life, that her care of the children was deficient, that for one child serious problems had developed at school, and that another child's behavior had deteriorated. These findings are plainly supported by the GAL's testimony and report. Moreover, the trial court did not err by finding that these are changes of substance that constitute a change in circumstances.

{¶ 17} The first assignment of error is overruled.

{¶ 18} The second assignment of error challenges the R.C. 3109.04(E)(1)(a) findings that it is in the children's best interest to change their residential parent to Father and that the third situation listed in R.C. 3109.04(E)(1)(a) applies, namely, that "[t]he harm likely to be

caused by a change of environment is outweighed by the advantages of the change of environment to the child," R.C. 3109.04(E)(1)(a)(iii).

{¶ 19}  The "best interest" finding is controlled by R.C. 3109.04(F)(1), which provides that, in determining the best interest of a child, the court must consider all of the relevant factors, including those listed in division (F)(1)(a) to (j) of the statute. The trial court here found that both parents wish to be designated the children's residential parent. *Compare* R.C. 3109.04(F)(1)(a) ("The wishes of the child's parents regarding the child's care"). The court also found, based on in-chambers interviews, that the oldest two children wish to live with Father and that the younger two wish to stay with their older siblings. *Compare* R.C. 3109.04(F)(1)(b) ("the wishes and concerns of the child, as expressed to the court"). All of the children reported a good relationship with their stepmother, said the court, and the younger two in particular have bonded with her. *Compare* R.C. 3109.04(F)(1)(c) ("The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest"). The court found that the children get along well with their step-siblings and have assimilated into Father's household. *Compare id*. The court noted that the GAL reported that the children have developed a bond with their stepmother and that they strongly desire to remain together in Father's household. *Compare id*. The court also noted that the child who is being bullied at school told the GAL that a change in schools would be welcome. *Compare* R.C. 3109.04(F)(1)(d) ("The child's adjustment to the child's home, school, and community"). Lastly, the court noted the GAL's recommendation that Father be designated the sole residential parent.

{¶ 20}  Mother contends that it is in the children's best interest to remain in her custody. She says that the children are integrated into her home and community. She points out that family

members on both her side and Father's side live near her. And Mother says that the children have friends and attend church in her community. Mother points out that the GAL testified that Father's home is not adequate to accommodate the children for a long period of time. (But the GAL also said that Father has promised that if the children live primarily with him, he will buy another home.) Mother says that she is more likely to tend to the children's medical needs. *Compare* R.C. 3109.04(F)(1)(e) ("The mental and physical health of all persons involved in the situation"). She points out that one child is overweight and that Mother has taken her to the doctor to address this issue and ensures that she eats properly and exercises. Mother also notes that the GAL has recommended more intensive counseling to address the behavioral and emotional issues of another child but that, as of the hearing, Father had not arranged any sort of counseling or help for the child. *Compare id*. Mother says that she is the parent more likely to facilitate court ordered parenting time. *Compare* R.C. 3109.04(F)(1)(f) ("The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights"). She says that Father has interfered with her parenting time and denied other family members, including the children's maternal grandmother, access to and time with the children.

{¶ 21} Mother fails to convince us that the trial court erred by finding that it is in the children's best interest to change their residential parent to Father and that the advantages of this change outweigh any harm. These findings are supported by the evidence presented. Mother also fails to convince us that the court erred in its weighing of the best-interest factors.

{¶ 22} The second assignment of error is overruled.

{¶ 23} "[C]ustody issues are some of the most difficult and agonizing decisions a trial

judge must make." *Davis*,_77 Ohio St.3d at 418, 674 N.E.2d 1159. And "[a] trial court judge has the power to exercise broad discretion in custody proceedings." *Id*. at 421. A custody decision "must not be reversed absent an abuse of discretion." *Id.* We find no abuse of discretion by the trial court in this case.

**{¶ 24}** The trial court's judgment is affirmed.

. . . . . . . . . . . . .

FROELICH, P.J., and DONOVAN, J., concur.

Copies mailed to:

David M. McNamee
Robert K. Hendrix
Hon. Steven L. Hurley